IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2017 OCT 27 P 1: 36

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

| | |
|---|---|
| U CAN RENT, LLC & PAMELA PRITCHETT, all on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CASE NO: 2:17-cv-736

**DEMAND FOR JURY TRIAL**

CLASS ACTION
COMPLAINT

## CLASS ACTION COMPLAINT

The Plaintiffs U Can Rent, LLC ("U Can Rent") and Pamela Pritchett ("Pritchett") (collectively "Plaintiffs"), by and through their attorneys, hereby bring this civil action against Defendant Nissan North America, Inc. ("Defendant" or "Nissan"). This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). They bring the action individually and on behalf of all others similarly situated, pursuant to the Federal Rule of Civil Procedure 23, and allege upon personal knowledge, information, and belief as follows:

### PARTIES

1. Plaintiff U Can Rent, LLC is a limited liability company organized under the laws of Alabama, with its principal place of business in Montgomery County, Alabama. It is a single member LLC, and its single member is an individual who is a citizen of the State of Alabama. The LLC is therefore a citizen of Alabama.

2. Plaintiff Pamela Pritchett is an adult resident and citizen of the State of Alabama.

1

3.  According to the Alabama Secretary of State, Defendant Nissan North America, Inc. is incorporated in the State of California and maintains its principal place of business in the State of California. It may be served for process at its agent for service: Corporation Service Company, Inc., 651 South Lawrence Street, Montgomery, AL 36104.

4.  This Court has personal jurisdiction over Defendant, because, *inter alia*, Defendant maintains and has maintained sufficient minimum contacts with and in the State of Alabama at all times material to this action. Defendant manufactured, distributed, sold, leased, and warranted the Affected Cars. Defendant also developed and disseminated the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Cars.

JURISDICTION AND VENUE

5.  This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

6.  This Court has personal jurisdiction over Defendant because it conducts business in Alabama, and has sufficient minimum contacts with Alabama. Defendant is also registered with the Alabama Secretary of State as entity ID number 908 - 337 and maintains various dealerships in Alabama.

7.  Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because Defendant has caused harm to Class members residing in this District.

FACTS

8.   U Can Rent purchased the following Nissans: nine 2013 Sentras, one 2013 Juke, and four 2014 Jukes.   Each of the cars purchased is equipped with Defendant's "new" Continuously Variable Transmission ("CVT" or "transmission").

9.   U Can Rent experienced problems with the CVT in its Sentras and Jukes. The CVT would jump, start, stop, bind, and lag unexpectedly, dangerously, and inappropriately.   U Can Rent's customers would complain about the CVT, causing U Can Rent loss of good will, unreasonable maintenance bills, and loss of revenue.

10.   Prichett purchased a 2013 Sentra in Montgomery, Alabama.   Her car is equipped with Defendant's CVT.   She experienced issues with her CVT that are substantially the same as those experienced by U Can Rent: it would jump, start, stop, bind, and lag unexpectedly, dangerously, and inappropriately.   It became so bad that it was dangerous to drive.   Her CVT ultimately failed, causing her car to be inoperable.   As her vehicle is no longer under the manufacturer's warranty, she would have had to pay approximately $4,500 in repair bills to replace the defective CVT with another CVT. The replacement CVT is no better than the original failed CVT.

11.   The above described vehicles are collectively referred to as "Plaintiffs' Vehicles," and Defendant is the developer, designer, manufacturer, assembler, tester, inspector, marketer, advertiser, distributor, seller, and warrantor of them.

12.   Nissan has refused to repair or replace Prichett's CVT at its cost and has refused to acknowledge any issues with the CVTs in Plaintiffs' Vehicles.

13.   Local Montgomery, Alabama dealership representatives have acknowledged that similar vehicles with the same CVTs often experience similar problems.   Multiple similar complaints from consumers like Plaintiffs have been lodged against Nissan in online forums.

3

14.   When Plaintiffs purchased Plaintiffs' Vehicles, they relied upon representations of Nissan that the Plaintiffs Vehicles were "dependable" and "durable" and came with a "comprehensive" warranty.  The representations were made in writing through Defendant's advertising and websites and were also reinforced orally by the salespersons.

15.   In fact, at all relevant times, Nissan advertised the innovation and durability of its "new" Continuously Variable Transmission ("CVT").  Nissan advertised that:

> **[a] continuously variable transmission has fewer moving parts, which can reduce friction and, consequently heat. Friction + Heat = wear and tear on your transmission. Reduced exposure to friction and heat can help a transmission last longer.**

16.   Upon information and belief, the same CVT transmission was manufactured and installed in multiple years and models and those vehicles will be referred to herein as the "Affected Vehicles:"

17.   At all relevant times, Defendant represented that the transmission was dependable and free from defects.  It further represented that the CVT was more "dependable" than traditional transmissions and, therefore, would last significantly longer.

18.   The Plaintiffs' vehicles came with a 36-month/36,000-mile limited warranty and a 5-year/60,000-mile powertrain warranty, which included, among other components, the transmission.

19.   Almost immediately, and with less than 20,000 miles, the Plaintiffs' Vehicles began having issues including, without limitation, engine revving and delays while the car was transitioning between gears, and shaking. At other times, they would unexpectedly and

4

unnecessarily feel like they dropped down a gear while driving normally casing a disruption in the drivability.

20. The Plaintiffs' Vehicles were properly and routinely maintained. At many services, Plaintiffs complained to Nissan service centers that the Plaintiffs' Vehicles did not appear to be shifting correctly and that there was an issue with the transmission. Each time, the service department conducted a computer diagnostic and advised that there was "nothing wrong" and that the transmission just needed to be "broken in." The Nissan service centers refused to make any repair to the transmission.

21. Defendant was aware of irreparable defects in the CVTs used in Plaintiffs' Vehicles for at least the last ten years. Defendant was aware of this defect at the time it advertised and sold the Plaintiffs' Vehicles.

22. In fact, Nissan has received countless consumer complaints, has been the subject of multiple investigations, and has been sued by other consumers complaining of similar defects in the same or virtually identical CVTs in other Nissan vehicles. *See Batista v. Nissan North America. Inc.*, S.D.F1., Civ. Ac. No. 1:14-24728; *Nelson, et al. v. Nissan North America Inc.*. D.N.J., Civ. Ac. No. 1:11 -05712;  *Pinto of Montville, Inc. v. Nissan North American, Inc., et al.*, D.N.J. MRS-L-753-17. The National Highway Safety Administration has also received countless complaints regarding the issue.

23. Defendant was aware of and on actual or constructive notice about the above referenced complaints, investigations, and lawsuits.

24. In fact, Defendant has previously issued multiple Technical Service Bulletins related to the defect in the CVT used in its vehicles. Defendant previously issued an extended warranty program called the "CVT Customer Satisfaction Program" in response to similar issues identified

5

in its 2007-2010 Sentra models and other vehicles. Shockingly, however, this Program has not been extended to the Plaintiffs' Vehicles or the Affected Vehicles.

25. Notwithstanding this long-standing problem and extensive knowledge of the issue, Defendant continued to advertise and sell the defective vehicles, failed to issue an appropriate recall and, amazingly, continued to market the CVT as a more "durable" and reliable transmission.

26. Before and at the time of Plaintiffs purchases, Defendant failed to disclose, concealed, and materially omitted any facts related to defects, consumer complaints, malfunctions, or safety hazards related to the Affected Vehicles' defective transmission.

27. The Plaintiffs' Vehicles are just a few of thousands of Affected Vehicles that suffer from an irreparable defect in the CVT that results in premature failure exhibited by sudden and unexpected shaking, violent jerking, lack of drivability, and improper acceleration/deceleration. Upon information and belief, these conditions are all the result of a defective transmission which has plagued the Affected Vehicles.

CLASS ACTION ALLEGATIONS

28. Plaintiffs bring this action on behalf of themselves and others similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23. The Classes which Plaintiffs seek to represent are composed of and defined as:

a.    All consumer residents in the United States who own, owned, lease, or leased an Affected Vehicle ("Consumer Class").

b.    All entities and businesses in the United State who own, owned, lease, or leased an Affected Vehicle ("Business Class").

29. The following persons are excluded from the definition of the Class:

6

a.    U.S. District Court judges, magistrate judges of any U.S. District Court, judges of the U.S. Court of Appeals for the Eleventh Circuit, and U.S. District Court personnel having any involvement with administration and/or adjudication of this lawsuit;

b.    Class counsel and their employees; and

c.    Employees of Defendant.

d.    Those who assert personal injury claims arising from or relating to the defect of the transmission in their Affected Vehicle and all persons who have had their Affected Vehicle repurchased or "bought back" by Defendant.

30.   This action has been brought and may properly be maintained as a Class action pursuant to the provisions of the Federal Rules of Civil Procedure, for these reasons:

a.  Members of the Classes are geographically distributed throughout the United States and exceed 10,000 in total so that their joinder is impractical; and

b.  Common questions of law or fact exist as to all members of the Classes and predominate over any questions affecting only individual Class members.

c.  Plaintiffs' claims are typical of the claims of the members of the Classes under Federal Rule of Civil Procedure 23. Each member of the Class either owns, owned, leases, or leased an Affected Vehicle.

d.  The Plaintiffs will fairly and adequately protect the interest of the Classes as required by Federal Rule of Civil Procedure 23. The Plaintiffs have no interests which are adverse to the interest of the Classes. The Plaintiffs have retained counsel who has substantial experience in the prosecution of Class actions.

e.  The prosecution of separate actions by individual members of the Classes would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Classes which would establish incompatible standards of conduct for Defendant; or (ii) adjudications with respect to individual members of the Classes which would as a practical matter be dispositive of the interest of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interest.

f.  Pursuant to Federal Rule of Civil Procedure 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Plaintiffs and Classes, causing injury to them and making Class-wide relief appropriate, specifically declaratory and injunctive relief.

g.  The questions of law or fact common to the Classes predominate over questions affecting only individual members.  A Class action is superior to all other available methods for the fair and efficient adjudication of this controversy under Federal Rule of Civil Procedure 23.  The harm suffered by many individual members of the Classes may not be great enough to warrant the expense and burden of individual litigation, which would make it difficult or impossible for individual members of the Classes to redress the wrongs done to them.  Individualized litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties and the court system in multiple trials of the complex factual issues of the case.  By contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each Class member.

8

## EXPRESS AND IMPLIED WARRANTIES

31.  For each Affected Vehicle, Defendant issued an express written warranty was issued which covered the vehicle, including but not limited to, the transmission system, and Defendant warranted the vehicle to be free of defects in materials and workmanship at the time of purchase or lease.

32.  These warranties were material factors in Plaintiffs' decision to purchase an Affected Vehicle.

33.  Pursuant to its express and written warranties, Defendant warranted the Affected Vehicles, including the CVT and its software, to be free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 60 months or 60,000 miles, whichever came first.

34.  Defendant also sold or leased the Affected Vehicles under implied warranties of merchantability and fitness for a particular purpose. Defendant impliedly warranted the Affected Vehicles to be merchantable, fit for the ordinary purposes for which they were intended to be used, including the guarantee that they were in a safe and nondefective condition for use by their owners or lessees for the ordinary purpose for which they were intended and were not otherwise injurious. Defendant is under a duty to design, construct, manufacture, inspect, and test the Affected Vehicles so as to make them suitable for the ordinary purposes of their use—transportation.

35.  Defendant breached its warranties for the Affected Vehicles as a result of the latent defects in the CVT; denying the defect in the CVT when confronted with complaints of shuddering, violent jerking, a "belt slip condition," a failure to accelerate and other malfunctions; failing to repair the transmission as warranted; and otherwise inadequately repairing the defect through ineffective

9

software updates or replacement of the defective transmission with an equally defective transmission.

36.  In breach of Defendant's warranties, the Affected Vehicles are defective, unsafe, unfit for the ordinary purposes for which they are intended to be used, and not merchantable.

## COUNT ONE
### (Breach of Express Warranty)

37.  Plaintiffs, individually and for the Classes, hereby incorporate each and every allegation as though fully set forth herein.

38.  For each Affected Vehicle, an express written warranty was issued that covered the vehicle, including but not limited to the CVT, and which warranted the vehicle to be free of defects in materials and workmanship at the time of delivery.

39.  Defendant breached its warranties by offering for sale and selling defective vehicles that were by design and construction defective and unsafe, thereby subjecting the occupants of the Affected Vehicles purchased or leased to damages and risks of loss and injury.

40.  Defendant's breach of its express warranties proximately caused the Classes to suffer damages in excess of $5,000,000.00.

41.  WHEREFORE Plaintiffs and the Classes seek full compensatory damages allowable by law, attorney's fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, the repair of all Affected Vehicles, replacement of all Affected Vehicles, the refund of money paid to own or lease all Affec

## COUNT TWO
### (Breach of Implied Warranty)

42.   Plaintiffs, individually and for the Classes, hereby incorporate each and every allegation as though fully set forth herein.

43.   Defendant impliedly warranted that the Affected Vehicles, which it designed, manufactured, sold, or leased to Plaintiffs and Class members, were merchantable, fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

44.   Because the Affected Vehicles are equipped with the defective CVT system, the vehicle purchased or leased and used by Plaintiffs and Class members is unsafe, unfit for use when sold, threatens injury to its occupants, and is not merchantable.   Defendant breached the implied warranty of merchantability in the sale or lease of the Affected Vehicles to Plaintiffs and members of the Class in that the vehicles were not fit for their ordinary purpose and not merchantable.

45.   Defendant's breach of its implied warranties proximately caused the Classes to suffer damages in excess of $5,000,000.00.

46.   WHEREFORE Plaintiffs and the Classes seek full compensatory damages allowable by law, attorney's fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, the repair of all Affected Vehicles, replacement of all Affected Vehicles, the refund of money paid to own or lease all Affected Vehicles, and any other relief to which Plaintiffs and the Classes may be entitled.

## COUNT THREE
### (Equitable and Injunctive Relief)

47.  Plaintiffs, individually and for the Classes, hereby incorporate each and every allegation as though fully set forth herein.

48.  Plaintiffs, members of the Classes, and the public will suffer irreparable harm if Defendant is not ordered to properly repair all of the Affected Vehicles immediately, offer rescission to Classes by repurchasing their Affected Vehicles for their full cost, reimburse the lessees of the Affected Vehicles the monies they have paid toward their leases, recall all defective vehicles that are equipped with the defective transmissions, and cease and desist from marketing, advertising, selling, and leasing the Affected Vehicles.

49.  Defendant is under a continuing duty to inform its customers of the nature and existence of potential defects in the vehicles sold.

50.  Such irreparable harm includes but is not limited to likely injuries as a result of the defects to the Affected Vehicles.

51.  WHEREFORE Plaintiffs and the Classes seek full compensatory damages allowable by law, attorney's fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, the repair of all Affected Vehicles, replacement of all Affected Vehicles, the refund of money paid to own or lease all Affected Vehicles, and any other relief to which Plaintiffs and the Classes may be entitled.

## COUNT FOUR
### (Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.)

52.  Plaintiffs, individually and for the Classes, hereby incorporate each and every allegation as though fully set forth herein.

53. For each Affected Vehicle, Defendant issued an express written warranty that covered the vehicle, including but not limited to the CVT, and which warranted the vehicle to be free of defects in materials and workmanship at the time of delivery.

54. Defendant breached its express warranties by offering for sale and selling defective vehicles that were by design and construction defective and unsafe, thereby subjecting the occupants of the Affected Vehicles purchased or leased to damages and risks of loss and injury.

55. Plaintiffs and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

56. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(4) and (5).

57. The Affected Vehicles are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

58. Defendant's written and implied warranties relate to the future performance of its vehicles because it promised that the drivetrain of the Affected Vehicles would perform adequately for a specified period of time or mileage, whichever came first.

59. Defendant has breached and continues to breach its written and implied warranties of future performance, thereby damaging Plaintiffs and Class members, when their Affected Vehicles fail to perform as represented due to an undisclosed CVT defect. Defendant fails to fully cover or pay for necessary inspections, repairs and/or vehicle replacements for Plaintiffs and the Classes.

60. Plaintiffs, members of Classes, and the public will suffer irreparable harm if Defendant is not ordered to properly repair all of the Affected Vehicles immediately, offer rescission to the Classes by repurchasing their Affected Vehicles for their full cost, reimburse the lessees of the Affected Vehicles the monies they have paid toward their leases, recall all defective vehicles that

are equipped with the defective CVT, and cease and desist from marketing, advertising, selling, and leasing the Affected Vehicles.

61.  Defendant is under a continuing duty to inform its customers of the nature and existence of potential defects in the vehicles sold.

62.  Such irreparable harm includes but is not limited to likely injuries as a result of the defects to the Affected Vehicles.

63.  WHEREFORE Plaintiffs and the Classes seek full compensatory damages allowable by law, attorney's fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, the repair of all Affected Vehicles, replacement of all Affected Vehicles, the refund of money paid to own or lease all Affected Vehicles, and any other relief to which Plaintiffs and the Classes may be entitled.

COUNT FIVE
(Unjust Enrichment)

64.  Plaintiffs, individually and for the Classes, hereby incorporate each and every allegation as though fully set forth herein.

65.  Defendant knew or should have known that Plaintiffs and the Classes paid for the Affected Vehicles with the expectation that they would perform as represented.

66.  Plaintiffs and the Classes conferred substantial benefits on Defendant by purchasing the defective Affected Vehicles. Defendant knowingly and willingly accepted and enjoyed those benefits.

67.  Nissan's retention of these benefits is inequitable.

68.  As a direct and proximate cause of Defendant's unjust enrichment, Plaintiff's and the Classes are entitled to an accounting, restitution, attorneys' fees, costs and interest.

14

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of THEMSELVES and all others similarly situated, request an order and judgment against Defendant which –

1.    Certifies the Classes and appoints Plaintiffs and their counsel to represent the Classes.

2.    Grants declaratory judgment to the Plaintiffs and Classes.

3.    Enjoins Defendant from doing the wrong alleged.

4.    Grants compensatory relief to the Plaintiffs and Classes.

5.    Awards a reasonable attorneys' fee to the Plaintiffs and Classes for the common and public good obtained in this action.

6.    Grants such other, further and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## **DEMAND FOR JURY TRIAL**

The Plaintiffs and the Classes hereby demand a trial by struck jury on all issues.

Dated this 25th day of October 2017.

BY:

Taylor C. Bartlett
ASB-2365-A51B
W. Lewis Garrison, Jr.
ASB-3591-N74W
Attorneys for Plaintiffs
Heninger Garrison Davis LLC
2224 First Avenue North
Birmingham, AL 35203
(205) 326-3336 Telephone
(205) 380-8085 Facsimile
Taylor@hgdlawfirm.com

Troy King
Law Offices of Troy King
7065 Fain Park Drive, Suite 203
Montgomery, Alabama 36117
(334) 215-4440 Telephone
(334) 215-4438 Facsimile
Troy@troykinglaw.com

PLEASE SERVE DEFENDANTS
BY CERTIFIED MAIL

Nissan North America, Inc.
c/o Corporation Service Company, Inc.
651 South Lawrence Street
Montgomery, AL  36104