IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| U CAN RENT, LLC, PAMELA PRITCHETT, LAKELAND ATLANTIC DRIVING SCHOOL, LLC, and MARCO LASHIN, all on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) | |
| | ) | CASE NO: 2:17cv736-MHT |
| Plaintiffs, | ) ) | |
| v. | ) ) | FIRST AMENDED CLASS ACTION COMPLAINT |
| NISSAN NORTH AMERICA, INC., | ) ) | |
| | ) | Jury Trial Demanded |
| Defendant. | ) | |

## **FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs U Can Rent, LLC, Pamela Pritchett, Lakeland Atlantic Driving School LLC, and Marco Lashin (collectively "Plaintiffs"), by and through their undersigned counsel, hereby bring this first amended class action complaint against Defendant Nissan North America, Inc.  The Plaintiffs bring this action individually and on behalf of all others similarly situated, pursuant to Federal Rule of Civil Procedure 23, and allege upon personal knowledge, information, and belief that the Defendant is liable to them and to the proposed class under federal and state law for the design, manufacture, marketing, and sale of vehicles with a defective Continuously Variable Transmission ("CVT" or "transmission").

## PARTIES

1. Plaintiff U Can Rent, LLC ("U Can Rent") is a limited liability company organized under the laws of Alabama, with its principal place of business in Montgomery County, Alabama.  It is a single member LLC, and its single member is an individual who is a citizen of Alabama.  U Can Rent is therefore a citizen of Alabama.

2. Plaintiff Pamela Pritchett is an adult resident and citizen of Alabama.

3. Lakeland Atlantic Driving School LLC ("Lakeland") is a limited liability company organized under the laws of Florida, with its principal place of business in Polk County, Florida.  It is a single member LLC, and its single member is an individual who is a citizen of Florida.  Lakeland is therefore a citizen of Florida.

4. Plaintiff Marco Lashin is an adult resident and citizen of Florida.  He resides in Polk County, Florida, and he is the single member of Lakeland.

5. Defendant Nissan North America, Inc. ("Nissan" or "Defendant") designed, manufactured, marketed, distributed, sold, leased, and warranted the vehicles at issue.  Defendant also developed and disseminated the manuals, warranty booklets, advertisements, and promotional materials relating to the vehicles.

6. According to the Alabama Secretary of State, Nissan is incorporated in the State of California and maintains its principal place of business in the State of

California.  It may be served for process at its agent for service: Corporation Service Company, Inc., 651 South Lawrence Street, Montgomery, AL 36104.

7.  This Court has personal jurisdiction over Defendant, because, *inter alia*, Defendant maintains and has maintained sufficient minimum contacts with and in Alabama at all times material to this action.  Defendant regularly conducts business in Alabama specifically related to the vehicles and allegations at issue, and it is registered with the Alabama Secretary of State as entity ID number 908 – 337.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

9.  Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because Defendant has caused harm to Class members residing in this District.

## FACTS

10.U Can Rent purchased the following Nissan vehicles: nine 2013 Sentras, one 2013 Juke, and four 2014 Jukes.  Each of those purchased cars is equipped with

Defendant's "new" Continuously Variable Transmission ("CVT" or "transmission").

11. U Can Rent experienced problems with the CVT in its Sentras and Jukes. The CVT would jump, start, stop, bind, and lag unexpectedly, dangerously, and inappropriately. U Can Rent's customers would complain about the CVT, causing U Can Rent loss of good will, unreasonable maintenance bills, and loss of revenue.

12. Pritchett purchased a 2013 Sentra in Montgomery, Alabama. Her car is equipped with Defendant's CVT. She experienced issues with her CVT that are substantially the same as those experienced by U Can Rent: it would jump, start, stop, bind, and lag unexpectedly, dangerously, and inappropriately. It became so bad that it was dangerous to drive. Her CVT ultimately failed, causing her car to be inoperable. As her vehicle is no longer under the manufacturer's warranty, she would have had to pay approximately $4,500 in repair bills to replace the defective CVT with another CVT. The replacement CVT is no better than the original failed CVT.

13. In 2015, in Orlando, Florida, Plaintiffs Lakeland and Lashin purchased a 2014 Nissan Versa Note, which also is a Defendant's vehicle with the CVT. Plaintiffs Lakeland and Lashin maintained and operated the vehicle properly and utilized it for business, specifically for the driving school which is Lakeland's business.

14.  In the recent weeks preceding this second amended class action complaint, the 2014 Nissan Versa Note of Plaintiffs Lakeland and Lashin dangerously and repeatedly failed due to the defective CVT.  The steering wheel vibrated violently when the vehicle was accelerated, and afterward, the vehicle no longer would start. It became disabled, costing Lakeland business because the vehicle could not be used for the driving school. Plaintiffs Lakeland and Lashin then incurred substantial expense to have the car towed for repair and to have the CVT replaced.

15. Nissan has refused to repair or replace Pritchett's CVT at its cost and has refused to acknowledge any issues with the CVTs in Plaintiffs' vehicles.

16. Local Montgomery, Alabama dealership representatives have acknowledged that similar vehicles with the same CVTs often experience similar problems. Multiple similar complaints from consumers like Plaintiffs have been lodged against Nissan in online forums.  Nissan has settled claims of some owners of its vehicles with the defective CVT.

17.  When Plaintiffs purchased the vehicles, they relied upon representations of Nissan that the cars were "dependable" and "durable" and came with a "comprehensive" warranty.  The representations were made in writing through Defendant's advertising and websites and were also reinforced orally by the salespersons.

18.  In fact, at all relevant times, Nissan advertised the innovation and durability of its "new" Continuously Variable Transmission ("CVT").  Nissan advertised that:

**[a] continuously variable transmission has fewer moving parts, which can reduce friction and, consequently heat. Friction + Heat = wear and tear on your transmission. Reduced exposure to friction and heat can help a transmission last longer.**

19.  Upon information and belief, the same CVT transmission was manufactured and installed in multiple Nissan vehicle models and model years, and those vehicles compromise the category and class of "Affected Vehicles."   The above-described vehicles of the Plaintiffs are "Affected Vehicles," and Defendant is the developer, designer, manufacturer, assembler, tester, inspector, marketer, advertiser, distributor, seller, and warrantor of the "Affected Vehicles."

20. The phrase "Affected Vehicles" is defined to include all Nissan vehicle models and model years containing the "new" CVT, excluding 2013-2014 model year Nissan Pathfinders and 2013-2014 model year Infiniti JX35/QX60 vehicles (a) equipped with what is referred to as the "FK-*k2 CVT transmission," and (b) owned by persons who have settled claims against Nissan over the FK-*k2 CVT transmission.   The latter vehicles and persons are excluded because, upon information and belief, Nissan has agreed to provide class relief to those persons.

21. At all relevant times, Defendant represented that the new CVT was dependable and free from defects.  It further represented that the CVT was more "dependable" than traditional transmissions and, therefore, would last significantly longer, a falsehood.

22. Plaintiffs and Class, in deciding to purchase the Affected Vehicles, relied upon Nissan to inform the public and potential purchasers of Nissan cars of any defects or dangers in the Affected Vehicles, including defects and dangers from major components such as the CVT.  Nissan failed to inform the Plaintiffs and Class of the dangers and defects of the CVTs, and the Plaintiffs and Class would not have purchased the vehicles had they known of the dangers and defects of the CVTs, or they would have paid a much lower price for the vehicles had they known of the dangers and defects.

23. The Plaintiffs' vehicles came with a 36-month/36,000-mile limited warranty and a 5-year/60,000-mile powertrain warranty, which included, among other components, the transmission.

24. Before the expiration of the durational and mileage limits of the warranty, and in one or more instances in less than 20,000 miles, the Plaintiffs' vehicles began having issues including, without limitation, engine revving and delays while the car was transitioning between gears, and shaking. At other times, the cars would unexpectedly and unnecessarily drop down a gear, disrupting the drivability of the

cars.  These problems were caused by the defective CVT, upon information and belief, although the Plaintiffs were unaware of the defects at the time.

25.  The Plaintiffs' vehicles were properly and routinely maintained.  At many times, Plaintiffs complained to Nissan service centers that the Plaintiffs' vehicles did not appear to be shifting correctly and that there was an issue with the transmission. Each time, the service department conducted a computer diagnostic and advised that there was "nothing wrong" and that the transmission just needed to be "broken in." The Nissan service centers refused to make any repair to the transmission, and thus the Defendant failed to repair the vehicles within the term of the warranty.

26.  Defendant was aware of irreparable defects in the CVTs used in Plaintiffs' vehicles for at least the last ten years.  Defendant was aware of these defects at the time it advertised and sold the Plaintiffs' vehicles and thereafter when it continued to disseminate information about the vehicles. At those times, the defects in the CVT that Nissan knew about, or should have known about, included -- but were not limited to -- defects in the design, manufacture, materials, and workmanship of the CVT.  Nissan failed to inform the Plaintiffs about the defects, and the defects have rendered the vehicles unsafe for driving and unmerchantable.

27.  In fact, Nissan has received countless consumer complaints, has been the subject of multiple investigations, and has been sued by other consumers complaining of similar defects in the same or virtually identical CVTs in other

Nissan vehicles. *See Batista v. Nissan North America. Inc.*. S.D.F1., Civ. Ac. No. 1:14-24728; *Nelson, et al. v. Nissan North America Inc.*. D.N.J., Civ. Ac. No. 1:11 -05712; *Pinto of Montville, Inc. v. Nissan North American, Inc., et al.*, D.N.J. MRS-L-753-17. The National Highway Safety Administration has also received countless complaints regarding the issue.

28. Defendant was aware of and on actual or constructive notice about the above referenced complaints, investigations, and lawsuits.

29. In fact, Defendant has previously issued multiple Technical Service Bulletins related to the defect in the new CVT in its vehicles. Defendant previously issued an extended warranty program called the "CVT Customer Satisfaction Program" in response to similar issues identified in its 2007-2010 Sentra models and other vehicles. Shockingly, however, this Program has not been extended to the Plaintiffs' vehicles and the wider number of all Affected Vehicles.

30. Notwithstanding this long-standing problem and extensive knowledge of the issue, Defendant continued to advertise and sell the defective vehicles, failed to issue an appropriate recall and, amazingly, continued to market the CVT as a more "durable" and reliable transmission. It knowingly failed to provide truthful information about the dangers and defects of the CVT.

31. Before and at the time of Plaintiffs purchases, Defendant failed to disclose, concealed, and materially omitted any facts related to defects, consumer complaints,

malfunctions, or safety hazards related to the Affected Vehicles' defective transmission.

32.  The Plaintiffs' vehicles are just a few of thousands of Affected Vehicles that suffer from an irreparable defect in the CVT that results in premature failure exhibited by sudden and unexpected shaking, violent jerking, lack of drivability, and improper acceleration/deceleration. Upon information and belief, these conditions are all the result of a defective transmission which has plagued the Affected Vehicles.

CLASS ACTION ALLEGATIONS

33.  Plaintiffs bring this action on behalf of themselves and others similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23.  The entire Class which Plaintiffs seek to represent is composed of and defined as:

a.      All consumer residents in the United States who own, owned, lease, or leased an Affected Vehicle ("Consumer Subclass");

b.      All entities in the United State who own, owned, lease, or leased an Affected Vehicle ("Business Subclass");

c.      All persons and entities described by subclasses (a) and (b) above who reside in Florida ("Florida Subclass"); and

d.      All persons and entities described by subclasses (a) and (b) above who reside in Alabama ("Alabama Subclass").

34.  The following persons are excluded from the definition of the Class:

    a.    U.S. District Court judges, magistrate judges of any U.S. District Court, judges of the U.S. Court of Appeals for the Eleventh Circuit, and U.S. District Court personnel having any involvement with administration and/or adjudication of this lawsuit;

    b.    Class counsel and their employees; and

    c.    Employees of Defendant.

    d.    Those who assert personal injury claims arising from or relating to the defect of the transmission in their Affected Vehicle and all persons who have had their Affected Vehicle repurchased or "bought back" by Defendant.

35.  This action has been brought and may properly be maintained as a Class action pursuant to the provisions of the Federal Rules of Civil Procedure, for these reasons:

    a. Members of the Classes are geographically distributed throughout the United States and exceed 10,000 in total so that their joinder is impractical; and

    b. Common questions of law or fact exist as to all members of the Classes and predominate over any questions affecting only individual Class members.

c. Plaintiffs' claims are typical of the claims of the members of the Classes under Federal Rule of Civil Procedure 23.  Each member of the Class either owns, owned, leases, or leased an Affected Vehicle.

d. The Plaintiffs will fairly and adequately protect the interest of the Classes as required by Federal Rule of Civil Procedure 23.  The Plaintiffs have no interests which are adverse to the interest of the Classes.  The Plaintiffs have retained counsel who has substantial experience in the prosecution of Class actions.

e. The prosecution of separate actions by individual members of the Classes would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Classes which would establish incompatible standards of conduct for Defendant; or (ii) adjudications with respect to individual members of the Classes which would as a practical matter be dispositive of the interest of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interest.

f. Pursuant to Federal Rule of Civil Procedure 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Plaintiffs and Classes, causing injury to them and making Class-wide relief appropriate, specifically declaratory and injunctive relief.

g. The questions of law or fact common to the Classes predominate over questions affecting only individual members. A Class action is superior to all other available methods for the fair and efficient adjudication of this controversy under Federal Rule of Civil Procedure 23. The harm suffered by many individual members of the Classes may not be great enough to warrant the expense and burden of individual litigation, which would make it difficult or impossible for individual members of the Classes to redress the wrongs done to them. Individualized litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties and the court system in multiple trials of the complex factual issues of the case. By contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each Class member.

## EXPRESS AND IMPLIED WARRANTIES

36. For each Affected Vehicle, Defendant issued an express written warranty was issued which covered the vehicle, including but not limited to, the transmission system, and Defendant warranted the vehicle to be free of defects in materials and workmanship at the time of purchase or lease.

37. These warranties were material factors in Plaintiffs' decision to purchase an Affected Vehicle.

38. Pursuant to its express and written warranties, Defendant warranted the Affected Vehicles, including the CVT and its software, to be free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 60 months or 60,000 miles, whichever came first.

39. Defendant also sold or leased the Affected Vehicles under implied warranties of merchantability and fitness for a particular purpose. Defendant impliedly warranted the Affected Vehicles to be merchantable, fit for the ordinary purposes for which they were intended to be used, including the guarantee that they were in a safe and nondefective condition for use by their owners or lessees for the ordinary purpose for which they were intended and were not otherwise injurious. Defendant is under a duty to design, construct, manufacture, inspect, and test the Affected Vehicles so as to make them suitable for the ordinary purposes of their use—transportation.

40. Defendant breached its warranties for the Affected Vehicles as a result of the latent defects in the CVT; denying the defect in the CVT when confronted with complaints of shuddering, violent jerking, a "belt slip condition," a failure to

accelerate and other malfunctions; failing to repair the transmission as warranted; and otherwise inadequately repairing the defect through ineffective software updates or replacement of the defective transmission with an equally defective transmission.

41. In breach of Defendant's warranties, the Affected Vehicles are defective, unsafe, unfit for the ordinary purposes for which they are intended to be used, and not merchantable.

<u>COUNT ONE</u>
<u>(Breach of Express Warranty)</u>

42. Plaintiffs, individually and for the Classes, hereby incorporate each and every allegation as though fully set forth herein.

43. For each Affected Vehicle, an express written warranty was issued that covered the vehicle, including but not limited to the CVT, and which warranted the vehicle to be free of defects in materials and workmanship at the time of delivery.

44. Defendant breached its warranties by offering for sale and selling defective vehicles that were by design and construction defective and unsafe, thereby subjecting the occupants of the Affected Vehicles purchased or leased to damages and risks of loss and injury.

45. Defendant's breach of its express warranties proximately caused the Classes to suffer damages in excess of $5,000,000.00.

46. WHEREFORE Plaintiffs and the Classes seek full compensatory damages allowable by law, attorney's fees, costs, punitive damages, and appropriate equitable

relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, the repair of all Affected Vehicles, replacement of all Affected Vehicles, the refund of money paid to own or lease all Affected Vehicles, and any other relief to which Plaintiffs and the Classes may be entitled.

## COUNT TWO
### (Breach of Implied Warranty)

47. Plaintiffs, individually and for the Classes, hereby incorporate each and every allegation as though fully set forth herein.

48. Defendant impliedly warranted that the Affected Vehicles, which it designed, manufactured, sold, or leased to Plaintiffs and Class members, were merchantable, fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

49. Because the Affected Vehicles are equipped with the defective CVT system, the vehicle purchased or leased and used by Plaintiffs and Class members is unsafe, unfit for use when sold, threatens injury to its occupants, and is not merchantable. Defendant breached the implied warranty of merchantability in the sale or lease of the Affected Vehicles to Plaintiffs and members of the Class in that the vehicles were not fit for their ordinary purpose and not merchantable.

50. Defendant's breach of its implied warranties proximately caused the Classes to suffer damages in excess of $5,000,000.00.

16

51.  WHEREFORE Plaintiffs and the Classes seek full compensatory damages allowable by law, attorney's fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, the repair of all Affected Vehicles, replacement of all Affected Vehicles, the refund of money paid to own or lease all Affected Vehicles, and any other relief to which Plaintiffs and the Classes may be entitled.

COUNT THREE
(Equitable and Injunctive Relief)

52.  Plaintiffs, individually and for the Classes, hereby incorporate each and every allegation as though fully set forth herein.

53. Plaintiffs, members of the Classes, and the public will suffer irreparable harm if Defendant is not ordered to properly repair all of the Affected Vehicles immediately, offer rescission to Classes by repurchasing their Affected Vehicles for their full cost, reimburse the lessees of the Affected Vehicles the monies they have paid toward their leases, recall all defective vehicles that are equipped with the defective transmissions, and cease and desist from marketing, advertising, selling, and leasing the Affected Vehicles.

54.  Defendant is under a continuing duty to inform its customers of the nature and existence of potential defects in the vehicles sold.

55.  Such irreparable harm includes but is not limited to likely injuries as a result of the defects to the Affected Vehicles.

56. WHEREFORE Plaintiffs and the Classes seek full compensatory damages allowable by law, attorney's fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, the repair of all Affected Vehicles, replacement of all Affected Vehicles, the refund of money paid to own or lease all Affected Vehicles, and any other relief to which Plaintiffs and the Classes may be entitled.

COUNT FOUR
(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.)

57.  Plaintiffs, individually and for the Classes, hereby incorporate each and every allegation as though fully set forth herein.

58. For each Affected Vehicle, Defendant issued an express written warranty that covered the vehicle, including but not limited to the CVT, and which warranted the vehicle to be free of defects in materials and workmanship at the time of delivery.

59. Defendant breached its express warranties by offering for sale and selling defective vehicles that were by design and construction defective and unsafe, thereby subjecting the occupants of the Affected Vehicles purchased or leased to damages and risks of loss and injury.

60.  Plaintiffs and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

61.  Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(4) and (5).

62.  The Affected Vehicles are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

63.  Defendant's written and implied warranties relate to the future performance of its vehicles because it promised that the drivetrain of the Affected Vehicles would perform adequately for a specified period of time or mileage, whichever came first.

64.  Defendant has breached and continues to breach its written and implied warranties of future performance, thereby damaging Plaintiffs and Class members, when their Affected Vehicles fail to perform as represented due to an undisclosed CVT defect. Defendant fails to fully cover or pay for necessary inspections, repairs and/or vehicle replacements for Plaintiffs and the Classes.

65.  Plaintiffs, members of Classes, and the public will suffer irreparable harm if Defendant is not ordered to properly repair all of the Affected Vehicles immediately, offer rescission to the Classes by repurchasing their Affected Vehicles for their full cost, reimburse the lessees of the Affected Vehicles the monies they have paid toward their leases, recall all defective vehicles that are equipped with the defective

CVT, and cease and desist from marketing, advertising, selling, and leasing the Affected Vehicles.

66.  Defendant is under a continuing duty to inform its customers of the nature and existence of potential defects in the vehicles sold.

67. Such irreparable harm includes but is not limited to likely injuries as a result of the defects to the Affected Vehicles.

68. WHEREFORE Plaintiffs and the Classes seek full compensatory damages allowable by law, attorney's fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, the repair of all Affected Vehicles, replacement of all Affected Vehicles, the refund of money paid to own or lease all Affected Vehicles, and any other relief to which Plaintiffs and the Classes may be entitled.  That relief is in excess of $5,000,000.00.

COUNT FIVE
(Unjust Enrichment)

69.  Plaintiffs, individually and for the Classes, hereby incorporate each and every allegation as though fully set forth herein.

70.  Defendant knew or should have known that Plaintiffs and the Classes paid for the Affected Vehicles with the expectation that they would perform as represented.

71.  Plaintiffs and the Classes conferred substantial benefits on Defendant by purchasing the defective Affected Vehicles. Defendant knowingly and willingly accepted and enjoyed those benefits.

72.  Nissan's retention of these benefits is inequitable.

73.  As a direct and proximate cause of Defendant's unjust enrichment, Plaintiff's and the Classes are entitled to an accounting, restitution, attorneys' fees, costs and interest.  That relief is in excess of $5,000,000.00.

COUNT SIX
(Deceptive Trade Claim)
(for Florida Subclass)

74. Plaintiffs Lakeland and Lashin, individually and for the Florida Subclass, hereby incorporate each and every allegation as though fully set forth herein.

75. Plaintiffs Lakeland and Lashin and the Florida Subclass purchased the Affected Vehicles.

76. Florida enacted the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

77.  It declared unlawful any "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

78.  Plaintiffs and the Florida Subclass are consumers as defined in FDUTPA.

79. Nissan engaged in the unfair, unconscionable, and deceptive acts or practices defined and proscribed by Fla. Stat. § 501.203(7).

80. Defendant marketed and sold the Affected Vehicles, and otherwise caused the Affected Vehicles to be placed into and maintained in the stream of commerce for use by consumers in Florida without disclosing the defect and serious safety hazards. While Nissan continues to conceal critical information regarding the defect and its associated dangers, consumers continue to use dangerous and patently unsafe vehicles which are not safely useable for their intended purposes without recall and replacement of the transmissions with an effective redesign.

81.  Nissan had actual knowledge that the transmission was and is defective and patently unsafe with a high probability of injury or damage to Plaintiffs and the Florida Subclass. Despite its knowledge, Defendant pursued a course of conduct that resulted in damage to Plaintiffs and the Subclass; alternatively, Defendant was so reckless or wanting in care that its conduct constituted a conscious disregard or indifference to the life, safety, or rights of Plaintiffs and the Subclass.

82.  Defendant was and remains obligated to disclose its knowledge regarding the hazards associated with the Affected Vehicles because of the public's reasonable expectation that their transmissions would not fail to work under reasonable and customary operation by drivers who did not know that a defective part could reasonably and expectedly impair the transmission system. Defendant should have disclosed to consumers that the Affected Vehicles have a defective transmission that may shudder, violently jerk, fail to accelerate as intended by the driver, and suffer other malfunctions increasing the risk of a crash.

83.  Defendant's failure to disclose the material safety hazards associated with transmission has and continues to mislead consumers because the failure to disclose this safety hazard was and remains material to all owners of Affected Vehicles. Defendant, by and through its dealers, sales people and agents, has and continues to inform potential purchasers of Affected Vehicles that they are safe, fit for the use for which they were intended, and merchantable. Plaintiffs, the Florida Subclass, and reasonable consumers attach significant importance and influence to the safety hazard posed by the defective transmission in making a decision to purchase, operate, and continuing to operate an Affected Vehicle.

84. Complaints have been made to the National Highway Traffic Safety Administration concerning the defect and to Defendant, including its dealers and agents. Those complaints document the severity of the problem and show that

Defendant was or should have been aware of the defect and that Defendant has been put on notice but has failed to act. Additionally, Plaintiffs and other CLASS members have complained about the defect directly to Defendant.

85.   The sale or lease of the Affected Vehicles constitutes a violation of FDUTPA in that Defendant's acts are unconscionable and constitute unfair or deceptive acts or practices. In continuing to sell, lease, and market the Affected Vehicles, without informing potential buyers or lessees of the defect, Defendant has also violated FDUTPA.

86.   Defendant's conduct and omissions described herein were unlawful within the meaning of FDUTPA and continue to violate Florida Statute §§ 501.201, et seq. Its conduct and omissions were likely to mislead a consumer acting reasonably in the circumstances and were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

87.   Plaintiffs and the Florida Subclass have been damaged and suffered a loss by Defendant's unfair and deceptive trade practices because they paid for the Affected Vehicles. Were it not for Defendant's unfair and deceptive trade practices, Plaintiffs and the Subclass would not have purchased, paid to warrant, nor continued to use the Affected Vehicles at all or only after they were rendered safe and the transmission replaced. The Plaintiffs and Subclass sustained damages including, but not limited to, the difference in the market value of the Affected Vehicles in the

condition in which they were delivered, the market value in the condition in which they should have been delivered, the loss of use of their vehicles (which has caused inconvenience and, in some instances, a loss of business income), and towing and repair charges.  Those damages exceed $5,000,000.00.

88.  The value of the Affected Vehicles with a defective transmission system is substantially less than the value of the vehicle would have had if the transmission system was fully operational. There is no requirement that a class member suffer physical injury in order to bring a claim under FDUTPA. It is Defendant's duty to rectify the problem at this stage before there is injury or death as a result of the defect it created and perpetuated.

89.  WHEREFORE, Plaintiffs and the Florida Subclass seek full compensatory damages allowable by law, attorney's fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, the repair of all Affected Vehicles, replacement of all Affected Vehicles, the refund of money paid to own or lease all Affected Vehicles, and any other relief to which Plaintiffs and the Florida Subclass may be entitled.

<u>COUNT SEVEN</u>
(Fraud and Suppression Claim)
(for Alabama Subclass)

90. Plaintiffs U Can Rent and Pritchett, individually and for the Alabama Subclass, hereby incorporate each and every allegation as though fully set forth herein.

91. Plaintiffs U Can Rent and Pritchett and the Alabama Subclass purchased or leased the Affected Vehicles.

92. At all relevant times, Defendant had the duty and obligation to disclose to the Plaintiffs and Subclass the dangers and defects of the CVT in the Affected Vehicles. Nissan breached that duty by falsely promoting the CVT as durable, safe, and long-lasting.

93. Had the Plaintiffs and Subclass known the truth, specifically that the CVT was not durable, safe, and long-lasting and, to the contrary, was defective and dangerous, they would not have purchased or leased their vehicles, or they would have paid far less to buy or lease them.

94. As a result, the Plaintiffs and Subclass suffered pecuniary injuries, including, but not limited to, loss of value, loss of use of the vehicles, inconvenience, and repair costs. Nissan's false promotion of the CVT was the proximate cause of those losses. Those losses exceed $5,000,000.00.

95. Additionally, Defendant omitted, suppressed, or concealed material facts of the dangers and defects of the CVT, leading to the same result: first, had the Plaintiffs and Subclass been informed of the truth, specifically that the CVT was not durable,

safe, and long-lasting and, to the contrary, was defective and dangerous, they would not have purchased or leased their vehicles, or they would have paid far less to buy or lease them; and second, the Plaintiffs and Subclass suffered pecuniary injuries proximately caused by Nissan's suppression of the material facts of the defects and dangers, and those injuries include, but are not limited to, loss of value, loss of use of the vehicles, inconvenience, and repair costs. Those injuries exceed $5,000,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of THEMSELVES and all others similarly situated, request an order and judgment against Defendant which –

1.    Certifies the Class and appoints Plaintiffs and their counsel to represent the Class.

2.    Grants declaratory judgment to the Plaintiffs and Class.

3.    Enjoins Defendant from doing the wrongs alleged.

4.    Grants compensatory relief to the Plaintiffs and Class in the utmost amount allowed by law.

5.    Awards punitive damages against the Defendant in favor of the Plaintiffs and Class in the utmost amount allowed by law.

6.    Awards a reasonable attorneys' fee to the Plaintiffs and Class, as prescribed by law and for the common and public good obtained in this action.

7.     Grants such other, further and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## DEMAND FOR JURY TRIAL

The Plaintiffs and the Class hereby demand a trial by struck jury on all issues.

Dated this 3rd day of January, 2018.

BY:     */s Taylor C. Bartlett*

      Taylor C. Bartlett
      ASB-2365-A51B
      W. Lewis Garrison, Jr.
      ASB-3591-N74W
      Christopher B. Hood
      ASB-2280-S35H
      *Attorneys for Plaintiffs*
      Heninger Garrison Davis LLC
      2224 First Avenue North
      Birmingham, AL 35203
      (205) 326-3336 Telephone
      (205) 380-8085 Facsimile
      Taylor@hgdlawfirm.com

      Of Counsel:
      Troy King
      Law Offices of Troy King
      7065 Fain Park Drive, Suite 203
      Montgomery, Alabama 36117
      (334) 215-4440 Telephone
      (334) 215-4438 Facsimile
      Troy@troykinglaw.com

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of January, 2018, I caused a copy of the above and foregoing to be served on all counsel named below by U.S. Mail and/or filing same with the Court's ECF system, which will notify said counsel of the filing electronically and will serve it electronically:

Charles A. Stewart III
Jonathan "Rudy" Hill
Sarah S. Osborne
BRADLEY ARANT BOULT
CUMMINGS LLP
445 Dexter Avenue, Suite 9075
Montgomery, AL 36104
cstewart@bradley.com
rhill@bradley.com
sosborne@bradley.com

Michael R. Pennington
BRADLEY ARANT BOULT
CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, AL 35203
mpennington@bradley.com

E. Paul Cauley, Jr.
S. Vance Whiffle
*(Pro Hac Vice* application forthcoming)
DRINKER BIDDLE & REATH LLP
1717 Main Street, Suite 5400
Dallas, TX 75201-7367
mailto:paul.cauley@dbr.com
vance.wittie@dbr.com

Troy King
LAW OFFICES OF TROY KING
7065 Fain Park Drive, Suite 203
Montgomery, AL 36117
troy@troykinglaw.com

*/s Taylor C. Bartlett*